Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3099 | **DATE** | 11/23/2004 |
| **CASE TITLE** | Gabriel Adan Salazar vs. Jo Anne B. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendant's motion for summary judgment [14-1] is denied. Plaintiff's motion for summary judgment is granted to the extent that this court reverses and remands the Commissioner's decision, but denied to the extent that plaintiff seeks a reversal and award of benefits. The court reverses the Commissioner's final decision and remands this case to the ALJ for further proceedings.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 2 4 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 16 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 11/23/2004 | |
| | | | date mailed notice | |
| IS | courtroom deputy's initials | | IS | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **GABRIEL ADAN SALAZAR,** | ) |
| Plaintiff, | ) Case No. 03 C 3099 |
| v. | ) Magistrate Judge |
| | ) Martin C. Ashman |
| **JO ANNE B. BARNHART,** Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Gabriel Adan Salazar, seeks judicial review of the final decision of Defendant, Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"), who determined that Plaintiff was not entitled to a Period of Disability, Disability Insurance Benefits ("DIB"), or Supplemental Security Income ("SSI"), pursuant to 42 U.S.C. § 405(g). Before this Court is Plaintiff's Motion for Summary Judgment, which requests this Court to reverse the Administrative Law Judge's ("ALJ") decision that Plaintiff was not entitled to a Period of Disability, DIB, or SSI and remand Plaintiff's case for further determination of his disability. The Commissioner's Motion for Summary Judgment, which requests this Court to affirm the ALJ's decision, is also before the Court. For the reasons set forth below, this Court grants Plaintiff's motion and reverses the ALJ's final decision and remands this case for further determination of Plaintiff's disability.

## I. Procedural History

Plaintiff applied for DIB and SSI on December 6, 2001. (R. at 62-64, 145-49.) Plaintiff claimed that on August 12, 2001, he became unable to work due to his "disabling condition." (R. at 62.) Plaintiff's claim was denied initially and upon reconsideration. (R. at 45-48, 55-56.) Plaintiff next requested a hearing before an ALJ. A hearing was held before ALJ James E. Horn on December 5, 2002, where Plaintiff, who was represented by counsel, testified. (R. at 32-42.) On February 21, 2003, the ALJ rendered his decision and found Plaintiff not disabled because Plaintiff did not have a medically determinable impairment or combination of impairments that were severe or that significantly limited his physical or mental ability to do basic work activities. (R. at 15.) Plaintiff filed a timely appeal, but the Appeal Council denied the request for review. (R. at 5-8.)

## II. Background Facts

### A. Plaintiff's Background

Plaintiff was born on December 30, 1943, and was fifty-nine years old at the time of the ALJ's decision. (R. at 62.) Plaintiff is not a U.S. citizen but he has lived in the U.S. since 1986 and is lawfully admitted for permanent residence. (R. at 145.) Plaintiff was born in Mexico, where he received formal education through sixth grade. (R. at 36.) Plaintiff has worked as a welder for approximately twenty years. (R. at 38.) Plaintiff's most recent employment ended in February 2002. (R. at 36.)

### B. Medical Evidence

Following an August 22, 2001 auto accident, Plaintiff began to complain about back and neck pain. Between August 24, 2001, and December 17, 2001, Plaintiff was treated for back and neck pain by Alfred Feinblatt, Doctor of Chiropractic, at Wood Dale Chiropractic, Ltd. (R. at 2, 112.) And starting on September 4, 2001, Plaintiff's complaints of back and neck pain begin to appear regularly in the medical records of Dr. Jorge Martinez, M.D., who appears to have been Plaintiff's treating physician since November 2000. (R. at 131-35.) Dr. Martinez's medical notes suggest that he continued to treat Plaintiff for his back and neck pain, as well as other ailments, until March 26, 2002. (R. at 131.)

In connection with his application for benefits, Plaintiff was evaluated by Dr. Ibrahim S. Sadek, M.D., on January 22, 2002. (R. at 120.) Dr. Sadek's diagnostic summary indicates that Plaintiff complained of back and neck pain resulting from an August 2001 auto accident. (Id.) Plaintiff told Dr. Sadek that he had been receiving physical therapy for his back and neck pain at a center in Wood Dale, Illinois, but that the pain persisted. (Id.) Plaintiff described the pain as radiating up to the back of his head and causing him frequent dizziness. (Id.) Upon examination, Dr. Sadek determined that Plaintiff's neck was supple, with no Jugular Venous Distention, no masses, no paracervical tenderness, or muscle spasm. (R. at 121.) Dr. Sadek examined Plaintiff and found his neck's range of motion was flexion forty degrees, extension thirty-five degrees, right and left rotation at forty degrees, and tilting bilaterally at thirty-five degrees. (Id.) An examination of Plaintiff's upper extremities found no apparent joint deformity, full range of motion of both shoulders, elbows and wrists, and motor strength of 5/5 bilaterally including hand grip and finger pinch. (Id.) Similarly, the examination of the lower extremities found no

swelling, scarring or deformity, full range of motion of both hips, knees and ankles, and motor strength of 5/5 bilaterally. (Id.) Plaintiff's neurological examination was also normal. (Id.) Plaintiff had no paraspinal tenderness or disalignment, his straight leg raise test was negative bilaterally, and his spinal range of motion was: flexion eighty degrees, extension twenty-five degrees, and right and left rotation of thirty-five degrees. (R. at 122.) Finally, Plaintiff's gait was normal. (Id.) Based on his examination, Dr. Sadek concluded that Plaintiff can ambulate without difficulty, sit, stand, handle small objects with his upper extremities, and take care of himself without assistance. (Id.)

On February 1, 2002, Dr. Vidya Madala, M.D., a Disability Determination Services ("DDS") physician, reviewed the medical evidence from Dr. Sadek's examination as well as records from Elmhurst Memorial Hospital, where Plaintiff underwent surgery for hemorrhoidectomy on December 1, 2000 and had x-rays taken after his August 2001 auto accident. In his report, Dr. Madala opined that Plaintiff did not have a severe impairment as defined by the regulations. (R. at 130.)

On June 1, 2002, Plaintiff underwent a magnetic resonance imaging ("MRI") examination of his brain and cervical spine. (R. at 142-43.) The MRI of Plaintiff's brain revealed ventricles of normal size, no evidence of abnormal T2 signals in the gray or white matter and no intra or extra-axial collections of blood or fluid. (R. at 142.) Ultimately, the MRI test of Plaintiff's brain was negative, i.e., there were no abnormalities. (Id.) The MRI of Plaintiff's cervical spine showed mild posterior osteophytic ridging at C5-C6 and C6-C7, questionable, minimal focal protrusion of the C3-C4 disc to the left of the midline, appreciated only on axial projections, and no evidence of significant central spinal stenosis. (R. at 143.)

### C. Plaintiff's Testimony

At the December 5, 2002 administrative hearing, Plaintiff appeared with counsel and testified that he can no longer work because he is disabled. (R. at 41.) Plaintiff told the ALJ that he had worked as a welder in the U.S. for approximately twenty years. (R. at 38.) Plaintiff testified that he had been injured in an auto accident on August 22, 2001, and that his appointments with chiropractors, and at least one trip to the Elmhurst Memorial Hospital, were part of his post-accident physical rehabilitation program. (R. at 39-40.) In January and February 2002, though he considered himself disabled, Plaintiff worked five days a week as a welder for his brother. (R. at 36-38.) Plaintiff was paid about $12 per hour, in cash, at that job. (R. at 37.) After working for his brother for five or six weeks, Plaintiff left the job because pain in Plaintiff's neck made it too difficult for him to perform the kind of overhead welding work the job required. (R. at 41.) Plaintiff also reported that his brother's welding shop had closed three or four months prior to the hearing. (R. at 37.) Plaintiff then told the ALJ that he could no longer perform overhead welding work, but that he could still perform welding work on a table. (R. at 42.)

When asked how he spends his days, now that he is not working, Plaintiff told the ALJ that he spends ninety minutes every day doing sit-ups and neck exercises given to him by Dr. Martinez. (R. at 40.) Additionally, weather permitting, Plaintiff goes for half-mile walks every two days. (R. at 40-41.) Plaintiff also testified that he spends his days driving his daughters to and from school, grocery shopping for his wife, and occasionally repairing his car. (R. at 41.)

## III. ALJ's Findings

The ALJ made the following specific findings:

1. That the claimant concurrently filed an application for a Period of Disability, Disability Insurance Benefits and an application for Supplemental Security Income payments on December 6, 2001.

2. That the claimant has not yet attained retirement age.

3. That the claimant was specially insured for disability purposes in August 2001.

4. That the claimant alleged disability commencing August 12, 2001.

5. That the claimant returned to work in January 2002, during the waiting period (September 2001 through January 2002), and engaged in substantial gainful activity through February 2002. Thus, he is not disabled before March 2002, as within twelve months after impairment onset the impairment did not prevent substantial gainful activity (20 CFR 404.1520(b)).

6. That for the period after February 2002 the claimant does not have a medically determinable impairment or combination of impairments that are severe or that significantly limit his physical or mental ability to do basic work activities (20 CFR §§ 404.1520 and 416.920); testimony of the claimant did not present work related limitations directed toward the issue of severity (20 CFR 404.1529).

7.  That the claimant has not been under a disability, as defined in the Social Security Act at any time through the date of this decision.

## IV. <u>Discussion</u>

In order to qualify for DIB or SSI payments an individual must meet the statutory standard for disability, which requires the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The statutes further define "inability to engage in any substantial gainful activity" as, not only unable to do one's previous work but, unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The determination of disability involves a five-step process that considers both medical and vocational factors. Plaintiff bears the burden of proof through step four of the five-step inquiry; the burden shifts to the Commissioner at step five. *Herron v. Shalala*, 19 F.3d 329, 333 n. 8 (7th Cir. 1994). Plaintiff's burden of proof includes providing medical evidence substantiating the assertion of disability. 20 C.F.R. § 404.1512(a); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994). The five steps are:

Step 1: Is the claimant engaged in substantial gainful work activity? If yes, the claimant is not disabled. If no, the inquiry proceeds to step two.

Step 2: Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is

expected to last at least twelve months? If no, the claimant is not disabled. If yes, the inquiry proceeds to step three.

Step 3: Does the claimant's severe impairment meet or equal the severity of an impairment listed in the appendix of 20 C.F.R. § 404, Subpt. P, App. 1? If no, the claimant is not disabled. If yes, the inquiry proceeds to step four.

Step 4: Can the claimant still perform past relevant work? If yes, the claimant is not disabled. If no, the inquiry proceeds to step five.

Step 5: Can the claimant make an adjustment and perform other work? If yes, the claimant is not disabled. If no, the claimant will be found disabled.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Herron*, 19 F.3d at 333 n. 8. If the ALJ determines that Plaintiff is not disabled at any step of the five-step inquiry, the inquiry ends without proceeding to the next step. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

The ALJ weighs the medical and testimonial evidence presented and, when he denies benefits, must build a logical bridge from the evidence to his conclusion. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ need not discuss every piece of evidence but he must at least minimally discuss Plaintiff's evidence that contradicts the Commissioner's decision so that the appellate court may track the ALJ's reasoning and be assured that the ALJ considered the important evidence. *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000). If the ALJ fails to address relevant evidence, the record will disclose that he was improperly playing doctor, which will likely be grounds for reversal. *Dixon*, 270 F.3d at 1177; *Davis v. Barnhart*, 187 F. Supp. 2d 1050, 1056 (N.D. Ill. 2002).

Section 205(g) of the Social Security Act grants federal courts the authority to review final decisions of the Commissioner with the power to affirm, modify, or reverse, with or without remand to the Commissioner for a rehearing. 42 U.S.C. § 405(g). The scope of this review is limited. This Court may not reweigh evidence, resolve conflicts in the record, decide questions of credibility or substitute our own judgment for that of the Commissioner. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Rather, this Court will affirm the ALJ's decision if it is supported by substantial evidence. *Id.* Evidence is considered substantial if a reasonable person would accept it as adequate to support the ALJ's conclusion. *Id.* Thus, if reasonable minds could disagree on whether Plaintiff is disabled, we must affirm the ALJ's decision denying benefits. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

### A. The ALJ Ended His Inquiry at Step Two.

In this case, the ALJ considered whether Plaintiff was entitled to a Period of Disability and DIB payments under Sections 216(i) and 223 of the Social Security Act and whether Plaintiff was disabled under Section 1614(a)(3)(A) of the Act. After hearing the medical evidence and Plaintiff's testimony, the ALJ concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, at any time through the date of the decision, as the record failed to disclose a severe impairment or combination of impairments. (R. at 15.) The ALJ then denied Plaintiff's claim, ending the five-step inquiry at step two.

The Commissioner argues that the ALJ's decision to deny benefits is supported by substantial medical and testimonial evidence and should be upheld. According to the Commissioner, the evidence shows Plaintiff can perform basic work activities and has no

medically determinable impairments. (Def.'s Mot. Summ. J. at 5-6.) Plaintiff disagrees and argues that the ALJ's decision is not based on substantial evidence and should be reversed and/or remanded. Plaintiff contends that the ALJ erred by not recognizing the June 1, 2002 MRI of Plaintiff's cervical spine as objective evidence of a medically determinable physical impairment that could reasonably be expected to produce debilitating headaches and back and neck pain. (Pl.'s Reply Mem. at 1-2.) Plaintiff claims that his headaches and back and neck pain prevent him from performing his past relevant work, i.e., heavy overhead welding work. (Pl.'s Reply Mem. at 2.) Plaintiff asserts that, by failing to recognize the connection between the MRI evidence and Plaintiff's inability to perform his past relevant work, the ALJ failed to build a logical bridge between the medical evidence and his finding that Plaintiff does not have a severe medical impairment. (Pl.'s Reply Mem. at 1-2.)

### B. The ALJ Must Carefully Evaluate the Medical Findings That Describe Plaintiff's Impairment.

In his decision, the ALJ found that the medical evidence presented did not show functional limitations on Plaintiff's ability to perform basic work activities nor any severe impairments. (R. at 15.) Under the Social Security Act, an impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by Plaintiff's statement of symptoms. 20 C.F.R. §§ 404.1508, 416.908; Social Security Ruling ("SSR") 96-4p, 1996 WL 374187, at *2 (S.S.A.); SSR 85-28, 1985 WL 56856, at *3 (S.S.A.).[1] An impairment is

---

[1] Social Security Rulings ("SSR") do not have the force of law but are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1); *Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

not severe if medical evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on Plaintiff's ability to perform basic work activities.[2] SSR 85-28, 1985 WL 56856, at *4; *Dunn v. Sullivan*, No. 90-C-4106, 1993 WL 730745, at *4 (N.D. Ill. Jan. 29, 1993). The ALJ's determination that Plaintiff's impairment is not severe requires a careful evaluation of the medical findings that describe the impairment (i.e., the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairment and related symptoms impose on Plaintiff's physical and mental ability to do basic work activities. 20 C.F.R. § 404.1529; SSR 96-3p, 1996 WL 374181, at *2 (S.S.A.). Where Plaintiff's impairments do not preclude the performance of basic work activities, it is reasonable to conclude that he is able to perform his past relevant work. SSR 85-28, 1985 WL 56856, at *4. If, however, the medical evidence establishes only a slight abnormality that has only a minimal effect on Plaintiff's ability to do basic work activity, but the evidence suggests Plaintiff cannot perform his past work because of the unique features of that work, the ALJ must not rule out a severe impairment at step two of the five-step inquiry. Id. Such a case warrants further inquiry into Plaintiff's ability to perform other work. Id. Finally, and significantly, at step two of the five-step inquiry, this severe impairment determination is generally considered a *de minimus* screening device to dispose of groundless claims. *Johnson v. Sullivan*, 922 F.2d 346, 347 (7th Cir. 1990).

---

[2] Basic work activities include physical functions such as walking, standing, sitting, pushing and pulling, as well as sensory functions (seeing, hearing, speaking) and the ability to carry out simple instructions and to use judgment. 20 C.F.R. § 404.1521.

### 1. The 2002 MRI of Plaintiff's Cervical Spine Must Be Evaluated.

The Record shows that Plaintiff has consistently complained about headaches and back and neck pain since August 2001. Dr. Martinez's records contain complaints of pain from August 2001 through to March 26, 2002. (R. at 131-35.) Plaintiff complained of headaches and back and neck pain when Dr. Sadek examined him in January 2002. (R. at 120.) Plaintiff's June 2002 MRIs of his brain and his cervical spine were ordered in response to complaints of headaches and back and neck pain. (R. at 142-43.) And at his December 2002 administrative hearing, Plaintiff testified that he experiences back and neck pain when he attempts heavy overhead welding, i.e., his prior relevant work. (R. at 41.)

Plaintiff correctly argues in his motion for summary judgment that the 2002 MRI of Plaintiff's cervical spine is more than a mere record of his complaints. (Pl.'s Reply Mem. at 1.) The 2002 MRI of Plaintiff's cervical spine reveals abnormalities in his spine and constitutes objective medical evidence that supports Plaintiff's complaints of pain and headaches. The MRI of plaintiff's cervical spine reveals mild posterior osteophytic ridging at the C5-C6 and C6-C7 levels. (R. at 143.) Additionally, there was questionable minimal focal protrusion of the C3-C4 discs to the left of the midline, appreciated only on axial projections. (Id.) There was no significant central spinal stenosis. (Id.) While the MRI report does not use severe language, even "mild" and "minimal" abnormalities in Plaintiff's spine may be related to his complaints of headaches, back and neck pain, and his alleged inability to perform his past relevant work. Given that the ALJ rejected Plaintiff's claim and found no medically determinable impairments that are severe or that limit Plaintiff's ability to do basic work activities, the 2002 MRI of

Plaintiff's cervical spine must be considered a medical finding that contradicts the Commissioner's decision.

A medical finding that contradicts the Commissioner's decision must be at least minimally discussed, *Godbey*, 238 F.3d at 808, and carefully evaluated by the ALJ. SSR 85-28, 1985 WL 56856, at *4. Furthermore, as noted above, where medical evidence establishes only a slight abnormality but suggests that Plaintiff cannot perform his past relevant work because of the unique features of that work the ALJ must not rule out a severe impairment at step two. Id. In this case, Plaintiff admits that he can perform some types of welding but complains that he cannot perform his past relevant work because of pain and headaches. (R. at 14, 41.) Plaintiff's argument, that medically established abnormalities in his cervical spine may be causing the pain and headaches he allegedly experiences when performing heavy overhead welding, must be addressed, even if the ALJ is convinced that Plaintiff can still perform basic work activities. *See* SSR 85-28, 1985 WL 56856, at *4. And unless the 2002 MRI of Plaintiff's cervical spine is at least minimally evaluated in the ALJ's decision, Plaintiff's claim may not be dismissed at step two of the five-step inquiry. Id.; *Godbey*, 238 F.3d at 808.

2. The ALJ's Decision Does Not Directly or Indirectly Evaluate the 2002 MRI of Plaintiff's Cervical Spine.

The ALJ did not evaluate the findings of the 2002 MRI of Plaintiff's cervical spine in his decision. In his decision, the ALJ merely recites that:

> A magnetic resonance test of the cervical spine revealed mild posterior osteophytic ridging at the C5-C6 and C6-C7 levels. There was questionable minimal focal protrusion of the C3-C4 discs to the left of the midline, appreciated

> only on axial projections. There was no evidence of significant central spinal
> stenosis (Exhibit 8F at 3).

(R. at 13.) The ALJ's decision contains no indication of how much weight was given to the MRI, no articulation of how the ALJ factored the MRI into his analysis, nor a reason for discounting the MRI results. The Court finds that this recitation of medical evidence is not a minimal evaluation of the evidence and does not satisfy the careful evaluation and informed judgment requirements of 20 C.F.R. § 404.1529, SSR 96-3p, or SSR 85-28. *See Godbey*, 238 F.3d at 808 (ALJ must present reasons for discounting contradictory evidence so that appellate court can track ALJ's reasoning); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995) (same).

The ALJ's decision does not otherwise incorporate an evaluation of the 2002 MRI of Plaintiff's cervical spine. The ALJ evaluated and relied upon the medical findings of Drs. Sadek and Madala, the 2002 MRI of Plaintiff's brain, and Plaintiff's own testimony regarding his daily activities. (R. 13-15.) None of this evidence, however, examines or addresses the findings of the 2002 MRI of Plaintiff's cervical spine.

The ALJ properly considered Dr. Sadek's January 22, 2002 medical consultative evaluation of Plaintiff and DDS Dr. Madala's February 2002 medical opinion. *See* 20 C.F.R. 404.1527(f)(2)(i); SSR 96-6p, 1996 WL 374180, at *2 (S.S.A.) (state agency physicians are highly qualified physicians who are also experts in Social Security disability evaluation); *Dixon*, 270 F.3d at 1177 (consulting physician's opinion may have the advantages of both impartiality and expertise). Dr. Sadek's physical examination of Plaintiff's spine, neck, reflexes/nervous system, upper and lower extremities, strength and flexibility revealed no abnormalities and did not support Plaintiff's complaints of back and neck pain. (R. at 13-14.) Relying on Dr. Sadek's

examination and on evidence from Elmhurst Memorial Hospital, Dr. Madala performed a functional assessment of Plaintiff and expressed and rationalized the opinion that Plaintiff had no exertional, manipulative, visual, postural, communicative or environmental limitations. (R. at 14.) Dr. Madala concluded that Plaintiff's impairments were not severe and that the medical evidence did not establish any severe abnormalities that would prevent Plaintiff from performing basic work activity. (Id.) *See* 20 C.F.R. § 404.1521. While these reports are significant, neither Dr. Sadek nor Dr. Madala could have incorporated the June 2002 MRI of Plaintiff's cervical spine into his opinion, as Dr. Sadek performed his examination in January 2002 and Dr. Madala evaluated those findings in February 2002.

The ALJ discussed the 2002 MRI of Plaintiff's brain. The ALJ noted that the 2002 MRI of Plaintiff's brain was ordered in response to Plaintiff's complaints of "persistent headaches, status post concussion." (R. at 13.) The MRI of Plaintiff's brain revealed ventricles of normal size, no evidence of abnormal T2 signals in the gray or white matter and no intra or extra-axial collections of blood or fluid. (Id.) The ALJ found the MRI of the brain to be significant for its negative results. (Id.) The MRI of Plaintiff's brain addresses Plaintiff's complaints of headaches in the context of post concussion head trauma, but not Plaintiff's back and neck pain or the headaches the back and neck pain may cause. Accordingly, the ALJ's brief discussion of the MRI of Plaintiff's brain may not substitute for evaluation of the 2002 MRI of Plaintiff's cervical spine.

The ALJ questioned Plaintiff on his daily activities. Such inquiries are essential to determining whether Plaintiff's alleged impairments significantly limit his ability to perform basic work activities. *Davis*, 187 F. Supp. 2d at 1057-58. Plaintiff's activities of daily living

include: ninety minutes of sit-up exercises for his neck condition, regular walks for exercise, driving his two children to and from school, grocery shopping, and repairing his car. (R. at 40-41.) Plaintiff also testified that he was able to perform welding work that was not overhead. (R. at 42.) Relying heavily, but not exclusively, on these statements, the ALJ concluded that Plaintiff's testimony did not establish a severe impairment. (R. at 14.) However, where a claimant alleges that he cannot work because of pain, the Seventh Circuit recognizes that a person's ability to engage in sporadic physical activities such as household chores, long walks, physical therapy exercises and grocery shopping, is fundamentally different from his ability to work eight hours a day five consecutive days of the week. *Carradine v. Barnhart*, 360 F.3d 751, 755-56 (7th Cir. 2004). Thus, while the inquiry into daily activities is certainly relevant to Plaintiff's ability to perform basic work activities, it is not determinative in a case such as ours nor can it substitute for an evaluation of the 2002 MRI of Plaintiff's cervical spine.

Finally, in her motion for summary judgment, the Commissioner attempts to tie several loose ends together. Initially, the Commissioner completely discounts the 2002 MRI of Plaintiff's cervical spine and argues that the MRI is unrelated to Plaintiff's complaints of headaches. (Def.'s Mot. Summ. J. at 5-8.) The Commissioner also argues that, by including all of the medical and testimonial evidence in his decision, the ALJ essentially addressed the 2002 MRI of Plaintiff's cervical spine and all related concerns. The Commissioner focuses on Dr. Sadek's and Dr. Madala's medical evaluations of Plaintiff's nervous system, neck and spine and argues that various findings in the doctors' evaluations make the "mild" and "minimal" abnormalities revealed in the 2002 MRI of Plaintiff's cervical spine medically insignificant. (Def.'s Mot. Summ. J. at 7-8.) The Commissioner's analysis and reasoning, however, do not

appear in the ALJ's decision. This Court may not justify the ALJ's determination with post hoc rationale and will not sustain the ALJ's decision based on the Commissioner's motion for summary judgment. *See NLRB v. Kentucky River Cmty. Care, Inc.*, 532 U.S. 706, 715 (2001); *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003); *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (The ALJ, not the Commissioner's lawyers, must build an articulate and rational bridge between substantial evidence and the ALJ's conclusion.).

The Court finds that the 2002 MRI of Plaintiff's cervical spine is never evaluated in the ALJ's decision. The Court recognizes that abnormalities in an MRI do not prove Plaintiff's complaints of pain and disability. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."). *See also Davis*, 187 F. Supp. 2d at 1057 n. 2 (SSR 85-28 requires that the ALJ evaluate, not simply accept, the medical evidence). Rather, the significance of the MRI will depend upon an informed judgment about the limitations and restrictions the impairment and related symptoms impose on Plaintiff's physical and mental ability to do basic work activities and his prior relevant work. SSR 96-3p, 1996 WL 374181, at *2; SSR 85-28, 1985 WL 56856, at *4. In this case, the ALJ's mere recitation of the MRI results does not satisfy the requirement that the ALJ evaluate the medical evidence and make an informed decision. Furthermore, the ALJ's mere recitation of the MRI results prevents meaningful review of the ALJ's decision by this Court. *See Godbey*, 238 F.3d at 808. While an ALJ need not provide a complete written evaluation of each piece of evidence, his decision must be based on fair consideration of all of the evidence presented. *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995); *Stein v. Sullivan*, 892 F.2d 43, 47

(7th Cir. 1989). Because the 2002 MRI of Plaintiff's cervical spine is never evaluated, the Court simply does not know if all of the relevant evidence was considered or if the ALJ built a logical bridge from the MRI evidence to his conclusion of not disabled. Unable to determine if the ALJ's decision is supported by substantial evidence, the Court reverses the ALJ's final decision and remands this case for further determination of Plaintiff's disability in accordance with this memorandum opinion and order.

## V. Conclusion

For the foregoing reasons, the Court reverses the Commissioner's final decision and remands this case to the ALJ for further proceedings consistent with this opinion. Commissioner's motion for summary judgment is therefore denied. Plaintiff's motion for summary judgment is granted to the extent that this Court reverses and remands the Commissioner's decision, but denied to the extent that Plaintiff seeks a reversal and award of benefits.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: November 23, 2004.

Copies have been mailed to:

| | |
|---|---|
| AGUSTIN G. GARCIA, Esq.<br>53 West Jackson Boulevard<br>Suite 730<br>Chicago, IL 60604 | MS. ANNE LIPNITZ<br>Special Assistant United States Attorney<br>200 West Adams Street<br>30th Floor<br>Chicago, IL 60606 |
| Attorney for Plaintiff | Attorney for Defendant |